ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
DENISE ANN FAULK
Assistant U.S. Attorney
Arizona State Bar No. 12700
Financial Litigation Unit
405 W. Congress Street, #4900
Tucson, Arizona 85701-5041
Telephone: (520) 620-7300
Denise.faulk@usdoj.gov
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | **COMPLAINT** |
| v. | |
| CIFX Consulting, LLC, and Kanwar D. Singh, | |
| Defendants. | |

Plaintiff United States of America alleges:

1.      The District Court has jurisdiction under 28 U.S.C. § 1345.

2.      Venue properly lies in this District Court because Defendant CIFX Consulting, LLC, does business in and Defendant Kanwar D. Singh is a resident of Maricopa County, Arizona.

3.      On June 9, 2010, the Small Business Administration ("SBA") authorized an SBA Guaranteed America's Recovery Capital (ARC) Loan to CIFX Consulting, LLC, guaranteed by Kanwar D. Singh, in the amount of $24,000.00. A true and correct copy of the Authorization is attached hereto as Exhibit A.

4.      On July 1, 2010, CIFX Consulting, LLC, signed an ARC Loan Promissory Note ("Note") promising to pay $24,000.00. A true and correct copy of the Note is attached hereto as Exhibit B.

5.      On July 1, 2010, Defendant Kanwar D. Singh signed an Unconditional Guarantee ("Guarantee"), guaranteeing payment of the Note in the amount of $24,000.00. A true and correct copy of the Guarantee is attached hereto as Exhibit C.

6.      Defendants defaulted on the Note and Guarantee in April 2013.

7.      JP Morgan Chase Bank, the original lender, assigned the Loan to SBA.  A true and correct copy of the Assignment is attached hereto as Exhibit D.

8.      The Defendants are indebted to the Plaintiff as evidenced in the Certificate of Indebtedness, attached hereto as Exhibit E and incorporated herein by this reference.

9.      All due credits and set-offs have been applied to the debt, and there now remains due and owing to the Plaintiff $20,006.45, which consists of $14,701.71 principal and $5,304.74 administrative charges, which debt, despite demand, has not been paid.

Wherefore, the Plaintiff prays for judgment against the Defendants in the amount of $20,006.45, which consists of $14,701.71 principal and $5,304.74 administrative charges, plus costs, post-judgment interest, and such other and further relief as the court shall deem proper.

DATED:  April 3, 2019

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona


*s/ Denise Ann Faulk*
Denise Ann Faulk
Assistant U.S. Attorney

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

| | |
|---|---|
| **Plaintiff (s):** **United States of America** | **Defendant (s):** **CIFX Consulting, LLC ; Kanwar D. Singh** |
| County of Residence: Pima | County of Residence: Maricopa |
| County Where Claim For Relief Arose: Maricopa | |
| Plaintiff's Atty(s): | Defendant's Atty(s): |

II. Basis of Jurisdiction:        **1. U.S. Government Plaintiff**

III. Citizenship of Principal Parties
**(Diversity Cases Only)**

Plaintiff:- **N/A**

Defendant:- **N/A**

IV. Origin :        **1. Original Proceeding**

V. Nature of Suit:        **190 Other Contract**

VI.Cause of Action:        **28 U.S.C. 1345; Recovery of SBA Debt Owed to the United States**

VII. Requested in Complaint

Class Action: **No**

Dollar Demand: **20,000**

Jury Demand: **No**

VIII. This case **is not related** to another case.

**Signature:** **Denise Ann Faulk, AUSA**

Date: **4/3/2019**

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.

Revised: 01/2014

EXHIBIT LIST


EXHIBIT A: SBA Authorization

EXHIBIT B:  ARC Loan Promissory Note

EXHIBIT C:  Unconditional Guarantee

EXHIBIT D:  Assignment, JP Morgan Chase Bank to SBA

EXHIBIT E:  Certificate of Indebtedness

# EXHIBIT A



U.S. Small Business Administration

# AUTHORIZATION
## (AMERICA'S RECOVERY CAPITAL (ARC) LOAN)

| SBA Loan # | 41289750-08 |
|---|---|
| SBA Loan Name | CIFX Consulting LLC |
| Approval Date | June 9, 2010 |

Lender:

JPMorgan Chase Bank, NA
312 South Fourth Street, 3rd Floor
KY1-2514
Louisville, KY 40202

U. S. Small Business Administration (SBA):

Arizona District Office
2828 North Central Avenue - Suite 800
Phoenix, AZ 85004-1093

SBA approves, under Section 506 of the American Recovery and Reinvestment Act of 2009 (P.L. 111-5, 123 Stat. 115), Lender's application, received June 9, 2010, for SBA to guarantee 100.0% of a loan ("Loan") in the amount of $24,000.00 to assist:

Borrower:

1.  CIFX Consulting LLC
    11418 E Aster Dr
    Scottsdale, AZ 85259

All requirements in the Authorization which refer to Borrower also apply to any Co-Borrower.

### A.  IT IS LENDER'S SOLE RESPONSIBILITY TO:

1.  Close the Loan in accordance with the terms and conditions of this Authorization.

2.  Obtain valid and enforceable Loan documents, including obtaining the signature or written consent of any obligor's spouse if such consent or signature is necessary to bind the marital community or create a valid lien on marital property.

3.  Retain all Loan closing documents. Lender must submit these documents, along with other required documents, to SBA for review if Lender requests SBA to honor its guarantee on the Loan, or at any time SBA requests the documents for review.

B. **REQUIRED FORMS**

1. Lender may use its own forms except as otherwise instructed in this Authorization. Lender must use the following SBA forms for the Loan:

   SBA Form 2318, Note (America's Recovery Capital (ARC) Loan)
   SBA Form 2320, Unconditional Guarantee (America's Recovery Capital (ARC) Loan)
   SBA Form 159 (7a) Compensation Agreement, if required under America's Recovery Capital (ARC) Loan Program Procedural Guide

2. Lender may use computer-generated versions of mandatory SBA Forms, as long as these versions are exact reproductions.

C. **CONTINGENCIES—**SBA issues this Authorization in reliance on representations in the Loan application, including supporting documents. The guarantee is contingent upon Lender:

1. Having and complying with a valid SBA Loan Guarantee Agreement (SBA Form 750 or SBA Form 750B for short-term loans) and any required supplemental guarantee agreements, between Lender and SBA;

2. Complying with the current applicable regulations, America's Recovery Capital (ARC) Loan Program Procedural Guide, and current SBA Standard Operating Procedures (SOPs);

3. Completing disbursement no later than eight (8) months from the approval date of this Authorization. The first disbursement must be made within 90 days of the approval date of this Authorization or the Loan will be automatically cancelled by SBA. Any undisbursed balance remaining eight (8) months from approval will be automatically cancelled by SBA;

4. Disbursing Loan Proceeds in consecutive monthly disbursement;

5. Not collecting any fees or costs from Borrower related to this Loan other than the direct costs of securing and liquidating collateral;

6. Having no evidence since the date of the Loan application, or since any preceding disbursement, of any unremedied adverse change in the financial condition, organization, management, operation, or assets of Borrower which would warrant withholding or not making any further disbursement. If this Authorization is dated more than 45 days prior to first disbursement, Lender must obtain satisfactory evidence that there has been no unremedied adverse change (as set forth in SOP 50 10 5(A)) since the date of the application that would warrant withholding or not making any disbursement;

7. Submitting any request for purchase no later than 120 days from the first uncured ARC principal payment default and limiting liquidation expense reimbursement requests to direct costs that do not exceed the amount of recovery Lender receives from Loan liquidation; and,

8. Satisfying all of the conditions in this Authorization.

D. **INTEREST PAYMENTS**

1. The interest rate on this Note will fluctuate. The initial interest rate for this Note is the Prime Rate (as published in the Wall Street Journal) in effect on the first business day of the month in which the SBA received the loan application plus 2.0% per year. The Prime Rate will be rounded to two decimal places with .004 being rounded down and .005 being rounded up. This

---

rate will be adjusted on the first business day of each month thereafter, using the Prime Rate (as published in the Wall Street Journal) in effect on that date. Borrower will not pay interest on this Note. Interest will be paid by SBA to the Lender in arrears on a monthly basis beginning the month following the initial disbursement. Lender may not increase the interest rate at default. The interest rate at default is the same as the interest rate in effect on the date of the earliest uncured payment default.

2.  Lender will use the following method for calculating monthly interest:

    Actual Days/365.

3.  SBA will not pay interest on accrued interest.

4.  Lender must bill the SBA monthly in arrears for the interest due on Form 1502. Interest will be paid by SBA after required 1502 reports on the Loan have been validated by SBA's DFC. If the amount requested is within established tolerance limits, SBA will pay the requested amount. If the amount requested is outside established limits, no interest will be paid and the Lender will be contacted to resolve the discrepancy. If Lender fails to file a 1502 report, no further interest will be paid until all required reports have been filed and validated.

5.  SBA or SBA's agent will perform one or more reconciliations of the interest billed and paid. If the reconciliation shows an interest overpayment, Lender will be responsible for paying SBA any amounts due SBA, and SBA may net the interest amount due from future interest payments or guarantee purchase amounts due the Lender. If the reconciliation shows an underpayment, SBA will pay any amounts due Lender as a result of a reconciliation. Lender will provide an ARC Loan transcript within 10 days of any request from SBA.

6.  After default, SBA will only pay interest until 120 days from the first uncured ARC principal payment default. Payment of interest after default is contingent upon any request for purchase of Loan being submitted no later than 120 days from the first uncured ARC principal payment default. At purchase, SBA will adjust the purchase amount to reconcile for any overpayments or underpayments previously paid to Lender.

7.  If the SBA guarantee is cancelled after loan disbursement has begun due to character ineligibility, financial information verification issues, or for any other reason, any interest payments disbursed to the Lender prior to such cancellation must be promptly repaid to SBA.

## E.  NOTE TERMS:

1.  **Maturity**: This Note will mature in 78 months from the date of initial disbursement.

2.  **Repayment Terms:**

    Lender must insert onto SBA Note, Form 2318, to be executed by Borrower, the following terms, without modification. Lender must complete all blank terms on the Note at time of closing:

    Borrower must make principal-only payments in the amount of $ 466.66 starting 18 months from the date of initial disbursement.

    Lender will apply each payment from Borrower to principal.

    All remaining principal is due and payable 78 months from the date of initial disbursement.

    Balloon payments on this Note are not allowed.

---

Borrower may prepay all or a portion of this Note without penalty.

If more than two percent (2%) of the Loan is cancelled, the Note will be reamortized over the 60 repayment months.

Borrower will not pay interest on this Note. Interest will be paid by SBA to the Lender in arrears on a monthly basis beginning the month following the initial disbursement. The interest rate on this Note will fluctuate. The initial interest rate for this Note is the Prime Rate (as published in the Wall Street Journal) in effect on the first business day of the month in which the SBA received the loan application plus 2.0% per year. The Prime Rate will be rounded to two decimal places with .004 being rounded down and .005 being rounded up. This rate will be adjusted on the first business day of each month thereafter, using the Prime Rate (as published in the Wall Street Journal) in effect on that date. Lender may not increase the interest rate at default. The interest rate at default is the same as the interest rate in effect on the date of the earliest uncured payment default.

## F.   USE OF PROCEEDS

1.   Loan proceeds must be used for the following:

   a.   $22,500.00 over 6 consecutive periodic payments to Bank of America for a Loan with an approximate balance of $22,727.82.

   b.   $798.00 over 6 consecutive periodic payments to Chase for a Loan with an approximate balance of $6,897.65.

   c.   $702.00 over 6 consecutive periodic payments to Chase for a Loan with an approximate balance of $4,421.73.

2.   The loan disbursement period is 6 months.

3.   Loan proceeds must be directly applied to a Qualifying Loan Periodic Payment of principal and interest, in full or in part, for a Qualifying Loan or must be forwarded to a Qualifying Loan Lender in the joint name of Borrower and Qualifying Loan Lender for payment of principal and interest, in full or in part, on a Qualifying Loan. Loan proceeds may not be disbursed by Lender into an escrow or other account that holds funds for future disbursement.

4.   If the Qualifying Loan is a Line of Credit from ARC Lender, and Lender allows Borrower to use the ARC Loan to make only one payment, then ARC Lender must defer the remaining 5 months of payments on the Line of Credit. If the Qualifying Loan is a Line of Credit from ARC Lender, Lender may not reduce the credit limit on the Line of Credit for at least 18 months after using the proceeds of the ARC Loan to pay down the principal balance of the Line of Credit, unless the Line of Credit defaults and is placed on non-accrual by the Lender.

5.   If the Qualifying Loan is a Home Equity Loan or a Credit Card obligation, Lender must follow specific guidance in the America's Recovery Capital (ARC) Loan Program Procedural Guide for the type of Qualifying Loan.

6.   Prior to first disbursement, Borrower must sign a disbursement schedule prepared by Lender, listing the date and amount of each Qualifying Loan payment by the ARC Loan, a copy of which must be kept in the loan file.

7. The amounts above are approximate. Lender may readjust each Qualifying Loan payments as long as no Qualifying Loan Lender is paid more than is due for each periodic payment on the Qualifying Loan, based on documentary evidence of the Qualifying Loan. Loan proceeds may not be used for any purpose other than to pay Qualifying Loan payments, in full or in part, except that ARC Loan payments may be used for balloon payments under limited circumstances described in the America's Recovery Capital (ARC) Loan Program Procedural Guide, and, in the sixth disbursement month, any remaining amount available on the Loan after the scheduled monthly periodic payment may be used to prepay principal on a Qualifying Loan.

## G.  COLLATERAL CONDITIONS

Lender must obtain a lien on 100% of the interests in the following collateral and properly perfect all lien positions:

1. **First Perfected Security Interest, subject to no other liens, in the following personal property** (including any proceeds and products), whether now owned or later acquired, wherever located:
   Equipment; Inventory; Accounts; Instruments; Chattel Paper; General Intangibles;

   a. Lender must obtain a list of all equipment and fixtures that are collateral for the Loan. For items with a unit value of $5,000 or more, the list must include a description and serial number, if applicable.

   b. Lender must obtain an appropriate Uniform Commercial Code lien search evidencing all required lien positions. If UCC search is not available, another type of lien search may be substituted.

2. **Guarantee on SBA Form 2320**, by Kanwar D Singh/Member, resident in Arizona.

The following language must appear in all lien instruments including Mortgages, Deeds of Trust, and Security Agreements:

*"The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:*

*a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.*

*b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.*

*Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument."*

**Arizona Mandatory Provision**—The following language must appear in all guarantees (SBA Form 2319 or 2320) signed by Arizona residents:

*"The undersigned waives any rights it may have pursuant to ARS Section 12-1641 et seq., and agrees pursuant to ARS Section 33-814 that the obligations of the undersigned may be enforced regardless of whether or not any Trustee's sale of security for this debt is held."*

## H.  ADDITIONAL CONDITIONS

### 1.  Insurance Requirements

Prior to disbursement, Lender must require Borrower to obtain the following insurance coverage and maintain this coverage for the life of Loan:

### 2.  Borrower, and Guarantor Company Documents

   a.  Prior to closing, Lender must obtain from Borrower and Guarantor a current copy of each of the following as appropriate:

   (1) **Corporate Documents**—Articles or Certificate of Incorporation (with amendments), any By-laws, Certificate of Good Standing (or equivalent), Corporate Borrowing Resolution, and, if a foreign corporation, current authority to do business within this state.

   (2) **Limited Liability Company (LLC) Documents**—Articles of Organization (with amendments), Fact Statement or Certificate of Existence, Operating Agreement, Borrowing Resolution, and evidence of registration with the appropriate authority.

   (3) **General Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable.

   (4) **Limited Partnership Documents**—Partnership Agreement, Certificate as to Partners, and Certificate of Partnership or Good Standing (or equivalent), as applicable, Certificate of Limited Partnership, and evidence of registration with the appropriate authority.

   (5) **Limited Liability Partnership (LLP) Documents**—Partnership Agreement, Certificate as to Partners, Certificate of Partnership or Good Standing (or equivalent) as applicable, and evidence of registration with the appropriate authority.

   (6) **Trustee Certification**—A Certificate from the trustee warranting that:
   (a) The trust will not be revoked or substantially amended for the term of the Loan without the consent of SBA;
   (b) The trustee has authority to act;
   (c) The trust has the authority to borrow funds, guarantee loans, and pledge trust assets;
   (d) If the trust is an Eligible Passive Company, the trustee has authority to lease the property to the Operating Company;
   (e) There is nothing in the trust agreement that would prevent Lender from realizing on any security interest in trust assets;
   (f) The trust agreement has specific language confirming the above; and
   (g) The trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors.

   (7) **Trade Name**—Documentation that Borrower has complied with state requirements for registration of Borrower's trade name (or fictitious name), if one is used.

   b.  Prior to closing, Lender must obtain from Borrower:

---

  (1) **Ownership**—Evidence that ownership and management have not changed without Lender's approval since the application was submitted.

3. **Operating Information**

  **Prior to any disbursement of Loan proceeds, Lender must obtain:**

 a. **Verification of Financial Information**—Lender must submit IRS Form 4506-T (SBA version) to the Internal Revenue Service to obtain federal income tax information on Borrower, for the last 3 years. If the business has been operating for less than 3 years, lender must obtain the information for all years in operation. This requirement does not include tax information for the most recent fiscal year if the fiscal year-end is within 6 months of the date SBA received the application. Lender must compare the tax data received from the IRS with the financial data or tax returns submitted with the Loan application, and relied upon in approving the Loan. Borrower must resolve any significant differences to the satisfaction of Lender and SBA. Failure to resolve differences may result in cancellation of the Loan.

  If a Delegated Lender does not receive a response from the IRS or copy of the tax transcript within 10 business days of submitting the IRS Form 4506-T, then Lender may close and disburse the loan provided that Lender sends a second request following precisely the procedures detailed in SOP 50 10 5(A) and Lender performs the verification and resolves any significant differences discovered, even if the Loan is fully disbursed.

  Non-delegated Lenders must follow the procedures included in SOP 50 10 5(A), Subpart B, Chapter 5 with regard to verification of financial information.

  If a material discrepancy appears or the IRS advises that it has no record on the applicant, Lender must report immediately to the 7(a) LGPC and document the Loan file of the action taken. SBA will investigate the matter and may direct the Lender to secure additional information, proceed with loan processing, rescind approval of the Loan (if no disbursement has occurred), suspend further disbursement, call the Loan, or initiate recovery of any disbursed amounts. Any interest payments disbursed to the Lender prior to any loan cancellation must be repaid to SBA. In addition, the SBA office will determine if a referral of the matter to OIG is warranted and will make that referral.

 b. **Authority to Conduct Business**—Evidence that the Borrower has an Employer Identification Number and all insurance, licenses, permits and other approvals necessary to lawfully operate the business.

 c. **Flood Hazard Determination**—A completed Standard Flood Hazard Determination (FEMA Form 81-93) if personal or real property collateral secures the Loan.

4. **Certifications and Agreements**

 a. Prior to first disbursement, Lender must require Borrower to certify that:

  (1) **SBA Guaranteed Loan**—

   (a) SBA's approval of this America's Recovery Capital (ARC) Loan does not create a commitment by Lender to make a loan to Borrower;

   (b) If Borrower defaults on Borrower's obligation to pay the principal of this Loan and any required expenses, SBA may be required to pay Lender under the SBA guarantee. SBA may then seek recovery of these funds from Borrower. Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or defenses available under local law to defeat, modify or

---

otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.

(c) Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligations of any personal guarantor of the Note.

(2) **Child Support**—No principal who owns at least 50% of the ownership or voting interest of the company is delinquent more than 60 days under the terms of any (a) administrative order, (b) court order, or (c) repayment agreement requiring payment of child support.

(3) **Current Taxes**—Borrower is current on all federal, state, and local taxes, including but not limited to income taxes, payroll taxes, real estate taxes, and sales taxes.

(4) **Environmental**—For any real estate pledged as collateral for the Loan or where the Borrower is conducting business operations (collectively "the Property"):

(a) At the time Borrower submitted the Loan application, Borrower was in compliance with all local, state, and federal environmental laws and regulations pertaining to reporting or clean-up of any hazardous substance, hazardous waste, petroleum product, or any other pollutant regulated by state or federal law as hazardous to the environment (Contaminant), and regarding any permits needed for the creation, storage, transportation or disposal of any Contaminant;

(b) Borrower will continue to comply with these laws and regulations;

(c) Borrower, and all of its principals, has no knowledge of the actual or potential existence of any Contaminant that exists on, at, or under the Property, including groundwater, other than what was disclosed in connection with the Environmental Investigation of the Property;

(d) Until full repayment of the Loan, Borrower will promptly notify Lender and SBA if it knows or suspects that there has been, or may have been, a release of a Contaminant in, at, or under the Property, including groundwater, or if Borrower or such Property are subject to any investigation or enforcement action by any federal, state, or local environmental agency (Agency) pertaining to any Contaminant on, at, or under such Property, including groundwater;

(e) As to any Property owned by Borrower, Borrower indemnifies, and agrees to defend and hold harmless, Lender and SBA, and any assigns or successors in interest which take title to the Property, from and against all liabilities, damages, fees, penalties or losses arising out of any demand, claim or suit by any Agency or any other party relating to any Contaminant found on, at, or under the Property, including groundwater, regardless of whether such Contaminant resulted from Borrower's operations. (Lender or SBA may require Borrower to execute a separate indemnification agreement).

b.  Lender must require Borrower to certify that it will:

(1) **Reimbursable Expenses**—Reimburse Lender for the direct costs of securing and liquidating collateral.

(2) **Books, Records, and Reports**—

(a) Keep proper books of account in a manner satisfactory to Lender;

(b) Furnish year-end statements to Lender within 120 days of fiscal year end;

(c) Furnish additional financial statements or reports whenever Lender requests them;

    (d)  Allow Lender or SBA to:
        [1]  Inspect and audit books, records and papers relating to Borrower's financial or business condition; and
        [2]  Inspect and appraise any of Borrower's assets; and
        [3]  Allow all government authorities to furnish reports of examinations, or any records pertaining to Borrower, upon request by Lender or SBA.

  (3)  **Equal Opportunity**—Post SBA Form 722, Equal Opportunity Poster, where it is clearly visible to employees, applicants for employment and the general public.

  (4)  **American-made Products**—To the extent practicable, purchase only American-made equipment and products with the proceeds of the Loan.

  (5)  **Taxes**—Pay all federal, state, and local taxes, including income, payroll, real estate and sales taxes of the business when they come due.

c.  Lender must require Borrower to certify that it will not, without Lender's prior written consent:

  (1)  **Distributions**—Make any distribution of company assets that will adversely affect the financial condition of Borrower.

  (2)  **Ownership Changes**—Change the ownership structure or interests in the business during the term of the Loan.

  (3)  **Transfer of Assets**—Sell, lease, pledge, encumber (except by purchase money liens on property acquired after the date of the Note), or otherwise dispose of any of Borrower's property or assets, except in the ordinary course of business.

ADMINISTRATOR
SMALL BUSINESS ADMINISTRATION

June 9, 2010

By:  Charmayne Barnes, Business Loan Coordinator,      Date
a Delegated Lender, as Lender and as an agent of and on behalf of the SBA for the purpose of executing this Authorization.

# EXHIBIT B



## U.S. Small Business Administration

# NOTE
## (America's Recovery Capital (ARC) Loan)

| | |
|---|---|
| SBA Loan # | 41289750-08 |
| SBA Loan Name | CIFX Consulting LLC |
| Date | July 1, 2010 |
| Loan Amount | $24,000.00 |
| Borrower | CIFX Consulting LLC |
| Lender | JPMorgan Chase Bank, NA |

1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

Twenty Four Thousand and no/100————————————————————————— Dollars

and all other amounts required by this Note. Borrower will not pay interest on this Note. Interest will be paid to the Lender by SBA.

2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

2014087475A

**J. PAYMENT TERMS:**

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

---

INTEREST PAYMENTS

The interest rate on this Note will fluctuate. The initial interest rate for this Note is the Prime Rate (as published in the Wall Street Journal) in effect on the first business day of the month in which the SBA received the loan application plus 2.0% per year. The Prime Rate will be rounded to two decimal places with .004 being rounded down and .005 being rounded up. This rate will be adjusted on the first business day of each month thereafter, using the Prime Rate in effect on that date. Borrower will not pay interest on this Note. Interest will be paid by SBA to the Lender in arrears on a monthly basis beginning the month following the initial disbursement. Lender may not increase the interest rate at default. The interest rate at default is the same as the interest rate in effect on the date of the earliest uncured payment default. Lender will use the following method for calculating monthly interest: Actual/360.

NOTE TERMS

Maturity: This Note will mature in 78 months from the date of initial disbursement.

Repayment Terms:

Borrower must make principal-only payments in the amount of $466.66 starting 18 months from the date of initial disbursement. Lender will apply each payment from Borrower to principal. All remaining principal is due and payable 78 months from the date of initial disbursement. Balloon payments on this Note are not allowed. Borrower may prepay all or a portion of this Note without penalty. If more than two percent (2%) of the Loan is cancelled, the Note will be reamortized over the 60 repayment months.

---

SBA Form 2318 (6-09)                                                                 Page 2 of 6

2014087475A

4. DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender if the Lender believes that the default may materially affect Borrower's ability to pay this Note;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due;

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur direct costs to secure or liquidate the Collateral. Among other things, the direct costs may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such direct costs, it may add the direct costs to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

SBA Form 2318 (6-09)                                                                                                   Page 3 of 6

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

2014087475A

### 7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

### 8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower includes its successors, and Lender includes its successors and assigns.

### 9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

2014087475A

From: B    ESKERPROD    Page: 13/19    Date: 6/27/28    1:21:07 PM

10. STATE-SPECIFIC PROVISIONS:

N/A

SBA Form 2318 (6-09)                                                           Page 5 of 6

From: BF   ESKERPROD   Page: 14/19   Date: 8/27/20   1:21:07 PM

2014087475A

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

CIFX Consulting LLC

By _____
Kanwar D Singh, Member

SBA Form 2318 (8-09)                                          Page 6 of 6

# EXHIBIT C

2014087475A



### U.S. Small Business Administration
# UNCONDITIONAL GUARANTEE
## (America's Recovery Capital (ARC) Loan)

| | |
|---|---|
| SBA Loan # | 41289750-08 |
| SBA Loan Name | CIFX Consulting LLC |
| Guarantor | Kanwar D Singh |
| Borrower | CIFX Consulting LLC |
| Lender | JPMorgan Chase Bank, NA |
| Date | July 1, 2010 |
| Note Amount | $24,000.00 |

1. **GUARANTEE:**

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor. Notwithstanding the foregoing, Guarantor is not obligated to pay interest on the Note. Interest will be paid to the Lender by SBA.

2. **NOTE:**

   The "Note" is the promissory note dated _____ July 1, 2010 _____ in the principal amount of Twenty Four Thousand and no/100————————————————————————————————————— Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. **DEFINITIONS:**

   "Collateral" means any property taken as security for payment of the Note or for any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

2014087475A

4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,
A. Guarantor waives all rights to:
    1) Require presentment, protest, or demand upon Borrower;
    2) Redeem any Collateral before or after Lender disposes of it;
    3) Have any disposition of Collateral advertised; and
    4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:
    1) Any default under the Note;
    2) Presentment, dishonor, protest, or demand;
    3) Execution of the Note;
    4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring direct costs of securing or liquidating Collateral;
    5) Any change in the financial condition or business operations of Borrower or any guarantor;
    6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:
    1) Lender failed to obtain any guarantee;
    2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3) Lender or others improperly valued or inspected the Collateral;

SBA Form 2320 (6-09)                                                    Page 2/5

2014087475A

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;
5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and any related direct costs, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. DIRECT COSTS OF SECURING OR LIQUIDATING COLLATERAL. Guarantor promises to pay all direct costs Lender incurs in securing or liquidating Collateral.
B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.
C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.
D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.
E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.
G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.
H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.
I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.
J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

SBA Form 2320 (6-09)

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

2014087475A

10. STATE-SPECIFIC PROVISIONS:

The undersigned waives any rights it may have pursuant to ARS Section 12-1641 et seq., and agrees pursuant to ARS Section 33-814 that the obligations of the undersigned may be enforced regardless of whether or not any Trustee's sale of security for this debt is held.

SBA Form 2320 (6-09)

Page 4/5

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.
Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):
By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.



SBA Form 2320 (6-09)                                                                                        Page 5/5

# EXHIBIT D

# ASSIGNMENT

## U.S. Small Business Administration

FOR VALUE RECEIVED, in accordance with SBA Form 750 executed by

Name of Lender:   JPMorgan Chase Bank, N.A.

("Lender" or "Assignor"), and in accordance with Loan Program Requirements, as that term is defined in 13 C.F.R. Part 120, Lender assigns, grants, conveys and transfers to the Assignee, the U.S. Small Business Administration ("SBA"), all right, title and interest in and to SBA 7(a) Loan

Number: 4128975008____ made to  Name of Borrower: CIFX CONSULTING LLC

on Date:   07/01/2010  , including all Loan Documents, Loan Instruments, and any associated security instruments, mortgages or deeds of trust (the "Loan").

Assignor authorizes the United States of America on behalf of the SBA to ask, demand, receive, collect, sue and take all lawful actions for recovery of the moneys due or to become due on this Loan, and further that the United States of America on behalf of the SBA may avail itself of its remedies under 31 U.S.C. § 3701, et seq., and/or any other remedies available at law or equity for collection of the Loan and the claim or debt evidenced by the Loan.

Assignor has not done and will not do anything to hinder or prevent the United States of America on behalf of the SBA from enforcing recovery on this Loan. Assignor agrees to timely execute such other documents as are requested by SBA to effectuate recordation or as otherwise requested by SBA to assist it in collection of the Loan. Any proceeds, payment or value of any kind with respect to the Loan or obligations secured or evidenced thereby that are received by Assignor or Assignee shall continue to be shared in accordance with the SBA Form 750 guarantee agreement covering this loan. The Assignor agrees that SBA reserves all rights and authority under 13 C.F.R. Part 120, including without limitation under 13 C.F.R. § 120.524. This Assignment shall be interpreted and construed under federal law.

The Assignor's address is:

| | |
|---|---|
| Lender Name | JPMorgan Chase Bank, N.A. |
| Address | PO BOX 29550 |
| City | Phoenix |
| State | AZ |
| Zip | 85038 |

The Assignee address is: United States of America, Small Business Administration,
(Please mark the applicable address)

National Guaranty Purchase Center (NGPC)
☒ 1145 Herndon Parkway Suite 900
Herndon, VA 20170

Commercial Loan Service Center (CLSC) - AR
☐ 2120 Riverfront Drive Suite 100
Little Rock, AR 72202

Commercial Loan Service Center (CLSC) - CA
☐ 801 R Street Suite 101
Fresno, CA 93721

In witness whereof, Lender, through its authorized representative and officer listed below, has executed this instrument on  Date:  _4-3-19_

| | |
|---|---|
| Name of Lender: | JPMorgan Chase Bank, N.A. |
| BY: | Mark Jarman |
| Title: | Associate |
| Address | PO BOX 29550, Mail Code AZ1-1004 |
| City | Phoenix |
| State | Arizona |
| Zip Code | 85038 |

Signed, sealed and delivered in the presence of:

NOTARY PUBLIC

ANITA RAMIREZ
Notary Public - Arizona
Maricopa County
Commission # 558095
My Comm. Expires Jan 3, 2023

Commission Expires:  _1/3/2023_

# EXHIBIT E



U.S. DEPARTMENT OF THE TREASURY
BUREAU OF THE FISCAL SERVICE
WASHINGTON, D.C. 20227

ACTING ON BEHALF OF
U.S. Small Business Administration
CERTIFICATE OF INDEBTEDNESS

Debtor Name(s) and Address(es):

CIFX Consulting LLC
17328 E Sunscape Drive
Fountain Hills, AZ 85268

Kanwar Singh
7500 E Deer Valley Rd,
Scottsdale, AZ 85255

| | | |
|---|---|---|
| Principal: | $ | 14,701.71 |
| DMS fees: | $ | 4,704.55 |
| DOJ fees: | $ | 600.19 |

(pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), (7); 31 C.F.R. 285.12(j) and 31 C.F.R. 901.1(f); and 28 U.S.C. 527, note)

**TOTAL debt owed as of December 28, 2018:  $20, 006.45**

The debt arose in connection with the co-debtors' April, 2013 default on a SBA Secured Disaster Loan (EIDL-90198940-05) in the amount of  $24,000.00.

**CERTIFICATION:**  Pursuant to 28 USC ss. 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by the U.S. Small Business Administration.

12/28/2018

X *Natalie R. Stubbs*

Signed by: Natalie R. Stubbs
Natalie Stubbs
Financial Program Specialist
U.S. Department of the Treasury
Bureau of Fiscal Service